Ranney, J.
Two reasons are assigned by the plaintiff as sufficient to entitle him to a new trial: 1. That the district court erred in finding from the facts in evidence, that the legal title to the-lands in dispute, was in the defendant, and not in the lessors of the plaintiff; and 2, in admitting in evidence the record in the chancery case, between England and Ramey. If this record was admissable, the Undisputed facts appearing are, 1. that Eveland was the equitable owner of the property, from August 22, 1817, until he sold and conveyed to the defendant; 2. Ramey having no title-to the land, either legal or equitable, on the 25th day of May, 1839, conveyed it by deed of mortgage to the lessors of the plaintiff, with covenant of warranty; 3. Ramey received a patent for this and other lands, and was thus invested with the legal title, on August 15, 1839; 4. In February, 1841, Eveland filed 'a bill in chancery against Ramey, setting up his equitable ownership of the property sinco 1817, and charging Ramey, as a trustee of the legal title, for his use and benefit, praying a decree for a conveyance. At the August term, 1842, the facts alleged in the bill were found to be true by the court, and Ramey decreed to- make a deed to Eveland in ieo simple, within thirty days.
Upon this state of facts, it is claimed by the plaintiff’s counsel, that when Ramey became invested with the legal title, in 1839, by patent from the government, it instantly passed to his grantees in the mortgage, by force of the covenant of warranty, and that there *482 was, consequently, no title remaining in Ramey upon which the decree subsequently made in favor of Eveland could operate.
The legal title having passed to the mortgagee, could only be ■diverted in favor of paramount equity, in a proceeding to which they were parties, and by decree against them. ^Whether a conveyance, executed by one having no title, and subsequently acquiring it, thus passes to the grantee, or remains with the grantor, under a total disability to use it to the prejudice of his grant, is, in almost all cases, entirely immaterial; and, therefore, much looseness of expression is to be found in the language used in the adjudged cases, which relate to the subject. Indeed, we think it is not very material in this case; but as it has been particularly adverted to it in the argument, we shall express our views upon it.
It is universally agreed that the subsequently-acquired title enures to the benefit of the grantee by way of estoppel, and binds not only the grantor, but all persons claiming under or through him; and passes with the land to any an’d all persons holding under the grantee. The general effect of this doctrine, truly extracted from all the authorities, is thus stated by the Supreme. Court of this state, in Douglass v. Scott, 5 Ohio, 198: “ The obligation created by estoppel, not only binds the party making it, but all persons privy to him ; the legal representative of the party, those who stand in his situation by act of law, and all who take his estate by contract, stand in his stead, and are subjected to all the consequences which accrue to him. It adheres to the land,, is transmitted with the estate; it becomes a muniment of title, and all who .afterward acquire the title, take it subject to the burden which the ■existence of the fact imposes on it.
■“ These principles had their origin at a very early period in the common law, and h'ave been adopted in the most respectable courts in our own country.”
Further applications of the same principles, no less explicitly declared, may be found in Lessee of Bond v. Swearingen, 1 Ohio, 395; Lessee of Allen v. Parrish, 3 Ib. 107 and 116; Lessee of Bennett v. Williams, 5 Ib. 462; Douglas v. McCoy, 5 Ibid. 526; Lessee of Jackson v. Williams, 10 Ib. 69; Lessee of Kinsman v. Loomis et al., Ib. 478.
And the reason given by the Chancellor of New York in Bank of Utica v. Mersereau, 3 Bark. Ch. 568, for binding *the heirs *483 and assigns of the warrantors, still further illustrates the nature and operation of the rule. He says: “As a covenant of warranty runs with the land, so as to give the heirs and assigns of the grantee the benefit of the estoppel as against 'the warrantor, it runs with the subsequently-acquired interest of the warrantor, in the hands of the heirs and assigns of the latter, so as to bind that interest by the estoppel, as against any person claiming the same under him, in the past.”
The import of the language used in these cases, is certainly unmistakable. It supposes the after-acquired title to pass from the grantor to his heirs or assigns, but still conclusively bound by the ■estoppel, creating a total disability in their hands to use it to the prejudice of the former grant, with warranty. Indeed, it seems very clear that the doctrine of estoppel could have no possible application in such an event, unless this were the case. If the title ■did not remain in the grantor, but immediately passed to the grantee, it would be impossible that any interest or title could descend, upon the death of the grantor, to his heir, or pass, by any subsequent deed, to his assignee.
If it did not, neither could have any title to assert, and conse-quently could not be said to be estopped from asserting what they had not; since the very idea of an estoppel, is a denial of the right of a party to assert the truth, or set up an interest or title he has, when it would conflict with his own previous acknowledgment or undertaking under seal, or operate a fraud upon others to do so.
The ground upon which the doctrine of estoppel has always been applied to deeds, is that it avoids circuity of action. Jackson v. Waldron, 13 Wend. 206. It had its origin in the ancient law, when the grantor, by his covenant of warranty, was bound, upon the eviction of the grantee, to restore him lands of equal value. This has been to this day no further changed than to allow a pecuniary equivalent to be awarded in place of lands.
*But for the application of this doctrine, the grantor might, with his subsequently-acquired title, oust his grantee; and the moment this was done, the right of the grantee would be perfect, to compel the grator to restore him the same or other lands of equal value; thus attaining in two suits, precisely what is now attained, by disabling the grantor in the first instance, from using the after-acquired title to the prejudice of his grant.
But if the title passed from the grantor as soon as it came to him, *484 to his grantee, it is evident the former could not recover the -possession, and the latter -would have no right to recover on his covenant. The grantee would have the title, with perfect ability to defend upon it, and of course perfect ability to prevent a breach-of the covenant, without the necessity of calling to his aid the doctrine of estoppel, and indeed, without any possibility of applying it.
The remedy afforded to the grantee in a court of equity, is entirely inconsistent with the idea that the title passes. Sugden (Vendors, vol. 3, p. 430) lays down the doctrine in that court thus: “ And if a man sell an estate to which he has no title, and after the conveyance acquire the title, he will be compelled to convey it to the purchaser.”
How convey a title which the grantor no longer has ? Or what necessity or propriety of decreeing a conveyance to a purchaser, who already has the title in advance of making the decree ?
The question was directly involved in the case of Doe ex dem. Marchant v. Covington, 8 Scott, 210. Chief Justice Tindal, in giving judgment, observed that the case had been very properly argued on the ground of estoppel; for if it were a question of title, the lessor of the plaintiff would clearly be out of court.”
. And in Hilliard on Real Property (vol. 2, p. 397), it is said: “ Estoppel can hardly be regarded as a distinct mode of acquiring title to real property, because it is not by itself a transfer or assurance, but depends, as a secondary incident, upon other direct alienations, although giving to them a peculiar and distinctive operation.”
*The case of Doe ex dem. Christmas v. Oliver, 10 Barn. & Cress. 181, is much relied upon by the plaintiff’s counsel, and is claimed to have changed to some extent the law in England. Suppose this to be so, it would not of necessity follow that we should abandon our former holding. But we do not so understand it. The case depended upon the effect of a fine levied by a contingent remainder-man in fee. It was for a long time a debated question, whether such contingent estates could be assigned or released, by the ordinary modes of conveyance, so as to vest a present interest, although to be enjoyed in the future. A volume might be filled, of very little value when done, with the disquisitions pro and con upon this subject. It may now, however, be regarded as settled, that such contingent interest, in both real and personal estate, is trans *485 missible like vested interests, as is very conclusively shown by the chancellor in Jackson v. Waldron, 13 Wend. 194, and Mr. Justice Wilde, in Winslow v. Goodwin, 7 Met. 377. It is very evident that the peculiarities of this species of estate controlled the decision of Doe, etc. v. Oliver, and that the language of Mr. Justice Bailey, in that case, is to be understood with reference to its peculiar circumstances.
But it is, perhaps, not very material in the decision of this case, whether the view we have taken or that of the plaintiff’s counsel is adopted. Whether the estoppel works upon the estate, and binds an after-acquired title, as between parties and privies, or immediately passes the title to the grantee, in ordinary cases, it is clear there is a limit to its operation which controls it in the present case, and deprives the lessors of the plaintiff of all benefit from the doctrine, in either point of view. As understood and applied in modern times, there is nothing harsh or unjust in the law of estoppel. It can not be used but to subserve the cause of justice and right. As stated by the Supreme Court of the United States in Vanrenselaer v. Kearney, 11 How. 326:
“ The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to *the common sense and justice of every one; and although it debars the truth in the particular case, and therefore is frequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict a j>arty of a previous falsehood—would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit, or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth, in order to prevent fraud and falsehood, and imposes silence on the party only when in conscience and honesty he should not be allowed to speak.”
Hence,'in the spirit of this doctrine, it has been long since settled, that it binds only parties and privies. As stated by Justice Story in Carver v. Jackson, 4 Pet. 83: “Technically speaking, it operates as an estoppel, and binds parties and privies; privies in blood, privies in estate, and privies in law. But it does not bind mere strangers, or those who claim by title paramount to the deed. It does not bind persons claiming by an adverse title, or persons *486 claiming from tbe parties by title anterior to tbe date of tbe reciting deed.”
And in Burchard v. Hubbard, 11 Ohio, 316, it was held that where a person without a title conveys by deed of warranty, and afterward receives title as trustee from the rightful owner, for the purpose of transmitting it to a bona fide purchaser, the doctrine of estoppel does not defeat the trust estate.
Now, in this case, the defendant claims by an equitable title, paramount to Ramey, and long anterior to the date of the mortgage to the lessors of the plaintiff. When the legal title came to Ramey, he held it as a mere trustee for Eveland; and when it was taken from him by the decree, it went entirely unincumbered with any estoppel arising from the covenant in the mortgage. Indeed, if the legal title still remained in Ramey, or the lessors of the plaintiff, it is by no means certain that either would be permitted to disturb the possession of the cestui que trust, even in an action of ejectment. 2. *Was the record in the chancery case admissible ? The decree finds in accordance with the allegations of the bill, that the lands in equity had belonged to Eveland since 1817—that Ramey held the legal title in trust for him; and ordered a conveyance. It is true the lessors of the plaintiff were not made parties, and therefore no interest they may have,'has been concluded or affected by the decree. ' The record was,’ however, admissible, as a link in the chain of the defendant’s title, and to show the character in which he held the land. For these purposes it imported absolute verity, and the objection of res inter alios acta could not avail to exclude it. If the title was in Ramey, the decree, acting upon it was sufficient to divest it and carry it to Eveland; and the same decree, showing that it was obtained upon the assertion of an interest paramount to Ramey, and prior to the execution of the mortgage, showed conclusively against Ramey, and prima facie as against the world, that the defendant possessed the property, not under Ramey, but by a right paramount and anterior to both him and the lessors of the plaintiff.
This principle of evidence is well settled. Mr. Greenleaf (1 Ev., sec. 539), in treating upon the question when records and judgments between other parties may be evidence, says they are always admissible “where the judgment constitutes one of the muniments of the party’s title to an estate; as, where a deed was made under a decree in chancery, or a sale was made by a sheriff upon execu *487 tion.” After adducing other instances, he adds: “So a judgment inter alios, is admissible, to show the character in which the possessor holds his lands.”
In Barr v. Gratz, 4 Wheat. 220, the same objection was made to the record as in this case; but the court overruled it, and said: “ To reject the proof of the decree, would be, in effect, to declare that no title derived under a decree in chancery, was of any validity, except in a suit between parties and privies, so that in a suit by or against a stranger, it would be a mere nullity. It might with as much propriety be *argued, that the plaintiff was not at liberty to prove any other title deeds in this suit, because they were res inter alios acta.”
The last extract from Greenleaf is fully supported by the opinion of Chief Justice Tindal, in Davies and wife v. Lowndes, 1 Bing. N. C. 597, where it was held, that on a trial touching the right to lands, decrees in chancery between other parties, concerning the same lands, wmre admissible in evidence, to show the character in which the possessor enjoyed them, although they were not conclusive as to the right.
Upon the whole case, we are of opinion that the legal title, conveyed to Ramey by patent from the government, remained in him in trust for Eveland, until it was divested by the decree, and transferred to him—-that the record was admissible to establish this fact; and further to show that Eveland obtained, claimed, and possessed the land by a right paramount to Ramey and anterior to the mortgage; and he is therefore not -prima facie estopped to assert the legal title thus derived, by the - covenant of warranty which Ramey made with the lessors of the plaintiff.
The motion for a new trial must be overruled, and judgment entered on the verdict.
Thurman, J., dissented.